IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

vs.

DANIEL LEE STONE,

               Defendant.

No. 3:17-cr-0055-JAJ-SBJ

**OPINION AND ORDER REGARDING
DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C.
§ 3582(c)(1)(A)**

_____

This case is before the court on the defendant's July 24, 2019, Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A) [Dkt. No. 146]. The defendant filed sealed electronic exhibits [Dkt. No. 147] in support of his Motion on July 26, 2019. On July 30, 2019, the government filed its Resistance To Stone's Motion For Compassionate Release [Dkt. No. 148]. On August 5, 2019, the defendant first filed a Supplement To [Defendant's] Motion For Compassionate Release [Dkt. No. 149], then filed a Response To Government's Resistance To Stone's Motion For Compassionate Release [Dkt. No. 150]. On August 12, 2019, the government filed a Resistance To Stone's Supplement To Motion For Compassionate Release [Dkt. No. 151]. On August 20, 2019, the defendant filed his Response To Government's Resistance To [Defendant's] Supplement To Motion For Compassionate Release [Dkt. No. 154]. On October 7, 2019, the government filed a Supplement To The Resistance To Stone's Motion For Compassionate Release [Dkt. No. 156]. The defendant filed no timely reply to the government's last filing. For the reasons stated below, the defendant's July 24, 2019, Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A) [Dkt. No. 146] is **DENIED.**

## I. INTRODUCTION

### A. *Factual Background*

As is too often the case, there is a very real risk that the substantive issues presented by defendant Daniel Lee Stone's Motion For Compassionate Release will become lost in or overshadowed by a complicated procedural history resulting from successive revelations about whether and how Stone's request was first submitted to and addressed by the Bureau Of Prisons (BOP). Because the court concludes that substantive issues are ultimately dispositive, it will begin this decision with the factual background, including both facts supporting Stone's request for compassionate release[1] and facts leading to his imprisonment in the first place.

#### 1. *Factual basis for compassionate release*

Stone's wife underwent back surgery in 2013. She is currently awaiting further surgery for her back arising from the discovery of a very serious situation that her surgeon states, in a supporting letter, could have serious and irreversible consequences if not corrected. Thus, the surgeon asserts that it is in her best interest to have the surgery as soon as possible. Nevertheless, Stone asserts that his wife has already delayed this surgery three times, because she has no family members or loved ones who can care for her during the 3- to 4-month period of recuperation. The Stones' two children and another family member submitted letters explaining why they are unable to provide care, and Mrs. Stone submitted a letter explaining that no other family members are available. Defendant Stone asserts that, if granted home confinement and a GPS bracelet for the remainder of his term, he would be able to provide full-time care for his wife and might also be able to work from home, so that he can complete his restitution plan.

---

[1] Many of the documents supporting Stone's motion were filed under seal. The court's recitation of the factual background for the motion will attempt to respect privacy of individuals by avoiding disclosure of non-essential personal information.

## 2.    *Factual basis for Stone's conviction*

Stone is now in prison following his conviction for cyberstalking.  As set out in the presentence investigation report (PSR), a police investigation arose from approximately 116 text messages that Stone sent a 16-year-old girl, who was a classmate of his daughter, between the evening of October 31, 2016, and November 1, 2016.  The girl's mother called law enforcement officers to the girl's residence on November 1, 2016, because they were afraid that the person sending the texts was on the property or even in the house.

The messages stated that the sender knew the girl's address and accurately described things in her house, referred to one of the girl's friends, talked about her being a "sugar baby," offered her a car and money, referenced oral sex and having a "threesome," and indicated that the sender knew a lot of personal information about the girl and her mother.[2] Additional text messages were sent from the same phone number shortly after the law enforcement officers left the girl's residence and included statements that the sender was watching the girl and knew where she was.  The girl repeatedly requested that the sender stop texting or harassing her and made clear that she was uncomfortable with the conversation.  Ultimately, in a plea agreement, the defendant admitted to sending over 170 text messages to the girl.  The girl and her mother stayed at a hotel on the night of November 2, 2016, because they feared for their physical safety.

Investigation by law enforcement officers eventually revealed that the sender's phone number was a "spoofed" number related to the subscriber's phone without the other party knowing who the sender was or revealing the true number of the subscriber's phone.  Eventually, the account used to "spoof" the number and the relevant cellphone numbers

---

[2] The PSR revealed some of the specific content of the messages sent to the girl.  The court finds it unnecessary to include the content of those messages beyond observing that they included messages that the court finds are sexually suggestive, sexually explicit, "grooming," and threatening.

were linked to Stone. The investigation also revealed that the texts originated from Ohio, during a time when Stone was there on a business trip, from a cell tower close to his hotel.

## B. Criminal Proceedings

### 1. Indictment and pretrial release

Stone was indicted on June 21, 2017, for cyberstalking in violation of 18 U.S.C. §§ 2261A(2)(B) and 2261(b). He was detained after his arrest and initial appearance on July 5, 2017, but at a detention hearing on July 7, 2017, the government's motion for detention was denied, and Stone was released on his own recognizance with conditions. Those conditions included, among others, travel restrictions, avoiding all contact with the minor victim and her family, electronic monitoring (an ankle bracelet), and communication monitoring. Stone's conditions of release were thereafter modified several times to allow him to travel out of state briefly, including for his wife's medical treatment, but a request for removal of his ankle bracelet was denied.

On April 30, 2018, Stone pleaded guilty pursuant to a plea agreement. The plea agreement provided that, in exchange for Stone's guilty plea, the government would request a three-level reduction for acceptance of responsibility and would not argue for a sentence above 24 months of incarceration, while Stone would be allowed to argue for probation. Stone remained on pretrial release after his guilty plea. Eventually, Stone was allowed to take employment in Texas and to discontinue GPS location monitoring, but he remained subject to other forms of location monitoring.

The PSR indicates that there was one incident while Stone was on pretrial release that warrants mention, here. On May 26, 2018, law enforcement officers were called to a local restaurant where the minor victim worked and was then on duty, because the victim had seen Stone and his family dining at the restaurant. The law enforcement officers were advised that Stone was subject to a federal no-contact order barring his contact with the victim or her family. The victim reported that Stone had made eye contact with her, causing

her to take refuge in the manager's office until her mother arrived. The victim also reported that Stone's daughter had been at the restaurant a few days earlier and that she had had contact with the victim at that time. When law enforcement officers spoke with Stone, he indicated that he was not subject to a federal no-contact order but to a pretrial restriction on contact with the victim and her family, he denied making eye contact with the victim, and he stated that he did not know the victim worked there, but he and his family agreed to leave. No request for revocation or modification of Stone's conditions of release followed this incident.

### 2. *Sentencing*

Stone's sentencing hearing was on January 9, 2019. After a reduction for acceptance of responsibility, the court found that Stone's total offense level was 17 and his criminal history category was III, which suggested a range of imprisonment between 30 and 37 months. Stone argued that his criminal conduct in this case had been based on what he thought was a slight to his daughter, to which he had an unwarranted protective reaction, and that the incident had resulted from a relapse of drinking during the trip to Ohio, but he asserted that he then stopped the harassment of his own accord. Among other mitigating issues, Stone pointed to his exemplary conduct while on pretrial release, despite the loss of his job in Iowa as the result of publicity about his arrest and the loss of his subsequent job in Texas because of an anonymous letter to his employer. He also asserted that, if he was sentenced to home confinement, he could continue working and providing care for his wife; in the alternative, he sought a sentence of probation.

After Stone's allocution, the court heard statements from both the victim and her mother. They explained the substantial negative effects that Stone's harassment had on the victim in terms of her school work, social and athletic activities, and mental health, as well as the impact on the victim's mother's employment that resulted from absences to help her daughter. The victim's mother requested that Stone receive the maximum available

sentence. The government, however, adhered to the plea agreement by requesting a sentence of 24 months of imprisonment.

After considering all the relevant factors, the court sentenced Stone to 18 months of imprisonment with one year of supervised release to follow. The court allowed Stone the privilege of self-surrender. The court left the record open at that time for evidence concerning restitution.

Stone filed a Motion To Reopen Sentencing on January 11, 2019, based on the lack of prior notice that the victim and her mother would be making statements to the court at sentencing. Stone filed a Notice Of Appeal on January 23, 2019. The court denied Stone's request to reopen the sentencing on February 1, 2019. The Eighth Circuit Court of Appeals denied Stone's request for release pending appeal in an Order filed February 8, 2019. On March 12, 2019, on Stone's motion, the Eighth Circuit Court of Appeals dismissed his appeal. On April 29, 2019, the court ordered restitution in the amount of $1,500 to the victim.

### C.    The Present Motion

As noted at the outset of this Order, the procedural history is complicated by successive revelations about whether and how Stone's request was first submitted to and addressed by the Bureau Of Prisons (BOP). Stone filed his Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A) on July 24, 2019, but he did not make any representations concerning exhaustion of administrative procedures. At the time he filed his Motion, Stone had served approximately 5 months of his 18-month sentence. In his Motion, Stone does argue that the court should grant his motion for compassionate release and allow him to serve the remainder of his sentence in home confinement, as well as any other relief that is equitable under the circumstances.

In its July 30, 2019, Resistance, the government's initial argument was that Stone failed to exhaust administrative procedures and, in fact, failed to make any compassionate

release request at all to the warden of the facility where he is imprisoned prior to filing his Motion. The government also asserted that Stone could not meet the standards for compassionate release, even if he had satisfied the administrative prerequisites.

In a Supplement, filed August 5, 2019, Stone clarified that he had written a letter to the warden on April 8, 2019, which he placed into the prison's interfacility mail system on April 11, 2019, and that he then sent the warden an email on April 12, 2019, confirming that he had sent his request for compassionate release. He asserted that he followed up with an email to the warden on May 14, 2019, pointing out that the deadline for a response had expired and informing the warden that he would be filing a motion for compassionate release with this court. Stone also asserted that he had met the standards for a compassionate release. In his Response To Government's Resistance, also filed on August 5, 2019, Stone reiterated that he had met the administrative exhaustion requirements and carried his burden to show that he was entitled to compassionate release, cross-referencing his Supplement. Therefore, Stone reiterated his request that the court grant his motion for compassionate release on the same conditions he had previously requested.

Stone's Response To Government's Resistance was not the end of the briefing on either procedural or substantive issues presented by his Motion, however. On August 12, 2019, the government filed its Resistance To Stone's Supplement. In it, the government argued that information received from the facility where Stone is imprisoned indicates that the email addresses to which Stone sent his emails to the warden did not result in those emails being directed to the warden and, furthermore, that the warden's email address, which is given to inmates, was not used. The government also asserted that the BOP had found no evidence of any package mailed to the warden or logged as received at the warden's office. The government then explained the extensive administrative procedures and investigations that would have resulted from a properly filed administrative request for compassionate release and also argued the importance of administrative review to eventual judicial proceedings on such a motion.

On August 20, 2019, Stone filed a Response To Government's Resistance To His Supplement. In it, Stone asserted that the government did not deny that the emails were sent to an email associated with the correctional facility where he is imprisoned or that the caption and the body of the emails were directed to the warden. Thus, he asserts that the warden cannot escape responsibility for failure to act on his request for compassionate release. Indeed, Stone asserts that his former case manager sent him a letter confirming that his request for compassionate release was made on April 11, 2019. Stone also reiterated the merits of his Motion and prayed for the same relief from the court.

There is more. On October 7, 2019, the government filed its own Supplement To Resistance resolving the mystery of what happened to Stone's administrative request for compassionate release: On or about April 11, 2019, Stone emailed a case manager at the facility where he is incarcerated a request for a compassionate release reduction in sentence, but this email was not received by the warden; on July 31, 2019, the case manager forwarded Stone's emailed request to the Reduction In Sentence (RIS) coordinator; on August 5, 2019, the RIS coordinator received this request; on August 28, 2019, the RIS committee met, reviewed, and denied Stone's request for the BOP to file a motion for compassionate release; on September 4, 2019, Stone was given a letter from the warden denying his request. A copy of that letter was attached to the government's Supplement and explains that Stone's request was denied "due to your spouse not being totally disabled and you not being the only available caregiver." The government then argued that Stone failed to exhaust his administrative remedies, because he failed to file an administrative appeal within 20 calendar days after the administrative denial. Again, the government argued that, even if Stone had met the administrative requirements, the court should deny his Motion For Compassionate Release for the same reasons that the BOP did and for the further reason that Stone is a danger to the victim and the community.

## II. LEGAL ANALYSIS

### A. Applicable Standards

Stone's Motion is based on the First Step Act of 2018 (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018).,

> [T]he First Step Act of 2018 ("First Step Act"), which was signed into law on December 21, 2018, . . . . amended the procedure for requesting sentence modifications based on extraordinary and compelling reasons, commonly referred to as "compassionate release." The First Step Act allows prisoners to petition the Court for such relief, when before only the Bureau of Prisons ("BOP") could move for compassionate release.

*United States v. Spears*, No. 3:98-CR-0208-SI-22, 2019 WL 5190877, at *1 (D. Or. Oct. 15, 2019); *United States v. Brown*, No. 4:05-CR-00227-1, 2019 WL 4942051, at *1 (S.D. Iowa Oct. 8, 2019).

Section 3582(c)(1), as amended by the First Step Act, ushered in the new regime. It provides as follows:

> **(c) Modification of an imposed term of imprisonment**.— The court may not modify a term of imprisonment once it has been imposed except that--
>
> **(1)** in any case--
>
>> **(A)** *the court*, upon motion of the Director of the Bureau of Prisons, or *upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility*, whichever is earlier, *may reduce the term of imprisonment* (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set*

*forth in section 3553(a) to the extent that they are applicable, if it finds that--*

> **(i)** *extraordinary and compelling reasons warrant such a reduction*; or

> **(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

*and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commissio*n; and

**(B)** the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure[.]

28 U.S.C. § 3582(c)(1) (emphasis added).

As one district court has explained, the Policy Statement issued by the United States Sentencing Commission, to which § 3582(c)(1)(A) refers, is U.S.S.G. § 1.B.1.13, but it "was last amended in November 2018 before the First Step Act was passed." *Spear*, 2019 WL 5190877, at *2. More specifically,

> *The Policy Statement takes the requirement in subsection (ii) that the defendant is not a danger to the safety of any other person or the community and applies it as an independent factor applicable to both circumstances in subsections (i) and (ii), even though that is not how the statute is written. U.S.S.G. § 1.B.1.13. Thus, the Policy Statement adds this requirement to compassionate release based on extraordinary and compelling reasons.* The Policy Statement also describes the following

> ways in which "extraordinary and compelling" circumstances may arise:
>
> (A) medical reasons, including (i) the defendant is suffering from a terminal illness, (ii) the defendant is suffering from a (I) serious physical or medical condition, (II) functional or cognitive impairment, or (III) deteriorating physical or mental health from the aging process, any of which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover";
>
> (B) the defendant is at least 65 years old, "experiencing a serious deterioration in physical or mental health because of the aging process," and has served at least 10 years or 75 percent of his or her sentence, whichever is less;
>
> (C) family circumstances . . .; or
>
> (D) an extraordinary and compelling reason other than or in combination with one of the enumerated reasons. *Id*. n.1.
>
> The Policy Statement further notes that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction)." *Id.* n.4.

*Spear*, 2019 WL 5190877, at *2–*3. The "family circumstances" glossed over as inapplicable in *Spear* are the basis for Stone's Motion, here. They expressly include "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13, application note 1(C)(ii); *see also United States v. Burbidge*, No. 1:15-CR-172, 2019 WL 4863481, at *2 (D.N.D. Oct. 2, 2019) (quoting application note 1 to U.S.S.G. § 1B1.13 in its entirety).

Under the new regime for compassionate release by a court, the courts have considered various issues as required by § 3582(c)(1). *See, e.g., Spear*, 2019 WL 5190877, at *3-*5 (considering timing, extraordinary and compelling reasons, danger to the community, and § 3553(a) factors); *United States v. Gonzales*, No. SA-05-CR-561-XR, 2019 WL 5102742, at *2-*3 (W.D. Tex. Oct. 10, 2019) (considering exhaustion of

administrative remedies and extraordinary and compelling reasons); *Brown*, 2019 WL 4942051, at *4-*5 (considering grounds for compassionate release by the court, exhaustion of administrative procedures as a "threshold matter," and extraordinary and compelling reasons); *Burbidge*, 2019 WL 4863481, at *1-*4 (noting that it was undisputed that the defendant had exhausted administrative remedies, then considering extraordinary and compelling reasons); *United States v. Early*, No. 7:02-CR-10125-002, 2019 WL 4576281, at *1 (W.D. Va. Sept. 20, 2019) (noting that the defendant represented that he had met administrative requirements because the BOP did not respond to his request for more than thirty days, then considering the § 3553(a) factors to determine whether he had established extraordinary and compelling reasons for compassionate relief based on age, where the defendant was under 70 years of age); *United States v. Gray*, No. 202CR00018JMSCMM13, 2019 WL 4572816, at *2 (S.D. Ind. Sept. 20, 2019) (considering exhaustion of administrative remedies, extraordinary and compelling reasons, and § 3553(a) factors).

These issues may be addressed in a 4-step analytical scheme, where each successive step depends upon whether the requirements of the prior step have been satisfied. Thus, the four steps consider the following issues: (1) timing or satisfaction of administrative requirements; (2) extraordinary or compelling reasons; (3) danger to the victim and the community; and (4) § 3553(a) factors. These steps will be addressed in more detail, below, at least to the extent that they are pertinent in this case. Under pre-FSA law, the defendant had the burden to establish that a sentence reduction was warranted under § 3582(c)(2). *See, e.g., United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016). It appears to the court that the burden is also properly on the defendant to establish that a compassionate release by the court is appropriate under amended § 3582(c)(1). *See Burbidge*, 2019 WL 4863481, at *4.

### B. Application Of The Standards

### 1. Exhaustion of administrative requirements

From the government's original response to Stone's Motion, it appeared that an issue—perhaps *the* issue—in this case would be whether Stone had exhausted administrative remedies before filing his Motion for relief from the court. The last filing on Stone's Motion, by the government, however, has now clarified the circumstances surrounding Stone's attempt to exhaust administrative remedies and, the court finds, removed an administrative exhaustion impediment to the court's consideration of Stone's Motion.

The First Step Act amendments provide that a defendant may move a court for compassionate release only "after the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The purpose of this exhaustion requirement "is to allow the BOP time to consider and act upon requests before necessitating court intervention." *Spears*, 2019 WL 5190877, at *3. Courts may stay consideration of a compassionate release motion filed prematurely, however, until expiration of the time for the BOP to act on an administrative request. *Spears*, 2019 WL 5190877, at *3; *United States v. Robinson*, 2019 WL 2567356, at *2 (W.D. Wash. June 21, 2019). Also, one district court assumed that the administrative exhaustion requirements had been met, notwithstanding that the government claimed that the defendant's administrative request was never received by the warden, where the time for administrative action had run with no action by the BOP after the defendant received acknowledgement that the request had been received by the prison. *Gonzales*, 2019 WL 5102742, at *2. These decisions are consistent with treating the administrative exhaustion requirement for compassionate release by the court as a prerequisite subject to equitable relief, rather than treating it as a jurisdictional requirement.

13

Here, the government now acknowledges that, on or about April 11, 2019, Stone emailed a case manager at the facility where he is incarcerated a request for a compassionate release reduction in sentence, but this email was not received by the warden. This is consistent with Stone's assertion that he had written a letter to the warden on April 8, 2019, which he placed into the prison's interfacility mail system on April 11, 2019, and that he then sent the warden an email on April 12, 2019, confirming that he had sent his request for compassionate release, even if the government is correct that Stone did not send the email to the warden's email address, but to a more general email address at the facility. It is also consistent with Stone's assertion that his former case manager sent him a letter confirming that his request for compassionate release was made on April 11, 2019. Stone submitted a copy of that letter, albeit unsigned, as an exhibit. *See* [Dkt. No. 155]. The government also acknowledges that, on July 31, 2019, the case manager forwarded Stone's emailed request to the Reduction In Sentence (RIS) coordinator. Why the case manager would have done nothing with Stone's email request for more than three months—until a week after Stone filed his July 24, 2019, Motion For Compassionate Release with the court—is not explained.

Under these circumstances, the court will assume that Stone exhausted his administrative remedies by submitting his administrative request for compassionate release then waiting more than thirty days after doing so before filing his Motion with the court. *See* 28 U.S.C. § 3582(c)(1)(A) (noting that administrative procedures are exhausted when time for an administrative appeal has run or the BOP has failed to take action on the request for 30 days, "whichever is earlier"); *Gonzales*, 2019 WL 5102742, at *2. The BOP was not entitled to "reset the clock" for administrative remedies by belatedly giving

consideration to Stone's administrative request, nor is the BOP now entitled to complain that Stone did not pursue administrative appeals of the belated administrative action. *Id.*[3]

The court concludes that Stone's purported failure to exhaust administrative remedies stands as no bar to the court's consideration of Stone's Motion.

### 2. *Extraordinary and compelling reasons*

The next step in the analytical process for a motion for compassionate release, pursuant to the requirements of § 3582(c)(1), is determination of whether or not Stone has identified "extraordinary and compelling reasons" for compassionate release. *See* 28 U.S.C. § 3582(c)(1)(A)(i). The government has maintained throughout the briefing of Stone's Motion that he has not established the required "extraordinary and compelling reasons" for compassionate release. The government acknowledges that the Sentencing Commission has identified a potential ground for release as the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner. Nevertheless, the government argues that the fact that Stone asserts circumstances of a type identified does not automatically make his situation sufficiently extraordinary and compelling to warrant relief, where his wife's medical condition was included in materials submitted at his original sentencing.

"Extraordinary and compelling reasons" are not defined in § 3582. According to Application Note 3 to U.S.S.G. § 1B1.13, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of

---

[3] It is also interesting to note that the compressed period for the BOP's consideration of Stone's administrative request—from August 5, 2019, when the RIS coordinator apparently received the request emailed by the case coordinator on July 31, 2019, until August 28, 2019, when the RIS committee made a decision—does not comport with the government's assertion that even expedited consideration of an administrative request would generally take 40 to 60 days, because of the extent of the investigation. It also is not clear that the BOP's consideration of the request has yielded the "relevant and vital information to the district court in reviewing the merits of a motion for compassionate release" that the government asserted it would. *See* Gov.'s Resistance To Stone's Supp. [Dkt. No. 151], ¶ 4. Certainly, the government submitted no materials developed in the administrative process in support of its resistance to Stone's Motion.

this policy statement." *Burbidge*, 2019 WL 4863481, at *3.  Consequently, it "is not grounds for a reduction under [§ 3582(c)(1)]." *United States v. Walker*, No. 1:11 CR 270, 2019 WL 5268752, at *2 (N.D. Ohio Oct. 17, 2019).  On the other hand, various district court judges have recognized that, before the passage of the FSA, one of the circumstances recognized as an "extraordinary and compelling reason" by the Sentencing Commission, in its application notes to U.S.S.G. § 1B1.13, was "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner."  U.S.S.G. § 1B1.13, cmt. n.1(C)(ii); *Spears*, 2019 WL 5190877, at *2-*3; *Gonzales*, 2019 WL 5102742, at *2; *Brown*, 2019 WL 4942051, at *2.

As one court observed, there is a split in how district courts have treated the policy statement:

> Some courts have held that the current Policy Statement is not binding on courts with respect to a compassionate release motion by a prisoner made after the First Step Act, because the Policy Statement only applies to motions filed by the BOP. *See, e.g., United States v. Beck*, 2019 WL 2716505, at *5 (M.D.N.C. June 28, 2019) ("There is no policy statement applicable to motions for compassionate release filed by defendants under the First Step Act. By its terms, the old policy statement applies to motions for compassionate release filed by the BOP Director and makes no mention of motions filed by defendants."); *United States v. Cantu*, 2019 WL 2498923, at *3 (S.D. Tex. June 17, 2019) (finding that the Policy Statement is not binding on the court because Congress overrode the statement in passing the First Step Act). Other courts are still guided by the Policy Statement when evaluating whether extraordinary and compelling circumstances exist. *See United States v. York*, 2019 WL 3241166 (E.D. Tenn. July 18, 2019) ("While this particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons that may justify a sentence reduction.'").

*Spears*, 2019 WL 5190877, at *3; *see also Gonzales*, 2019 WL 5102742, at *2-*3 ("Now with the First Step amendments, it is unclear how courts are to consider motions to reduce a sentence for 'extraordinary and compelling reasons' or 'compassionate release,'" and concluding that, because the Sentencing Guidelines are no longer mandatory, judges are not bound by U.S.S.G. § 1B1.13, but should still consider the Guidelines).

This court is not required to choose a side in this split, however, under the circumstances presented, here. This is so, because the court will accept as true Stone's allegations about the circumstances on which he premises his request for compassionate release and will assume that those circumstances qualify as "extraordinary and compelling." The court can do so, because even assuming that the circumstances presented qualify as "extraordinary or compelling," Stone is not entitled to compassionate release under the remaining steps in the analysis. *Cf. Spears*, 2019 WL 5190877, at *3 ("The Court need not decide the issue, however, because reducing Spears' sentence is consistent with the Policy Statement.").

### 3. *Danger to the victim and community*

As mentioned, above, the policy statement in application note 1 to U.S.S.G. § 1B1.13, last amended before the FSA was passed, applies the "not a danger" requirement to a compassionate release on the basis of "extraordinary and compelling reasons," even though the statute does not. *Spear*, 2019 WL 5190877, at *2–*3; *Brown*, 2019 WL 4942051, at *1. Stone argues that there is no evidence that he would be a danger to the community or victim if he were to be placed in home confinement with GPS tracking, because he has had no issues while incarcerated and, indeed, he has not committed any acts of violence or committed any crimes during his period of incarceration. He contends that the court would not have let him self-surrender after his sentencing, if he posed a danger to the community. The government argues that Stone's shocking and threatening criminal conduct in stalking the minor victim makes him a significant danger to the community if released.

The court concludes that the "danger" consideration weighs against Stone's compassionate release. In *Spears*, the court explained the considerations relevant at this step of the analysis as follows:

> The Policy Statement provides that compassionate release is only appropriate when "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." That statute directs a court to consider: (1) the nature and circumstances of the offense charged, including whether it is a crime of violence or involves a controlled substance; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including character, physical and mental condition, family ties, employment, financial resources, community ties, past conduct, criminal history, and drug and alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that release would pose.

*Spears*, 2019 WL 5190877, at *4. Although the court recognized that the defendant in that case had been sentenced for a serious drug conspiracy and had been convicted of crimes of violence, his age, health, and the age of his prior violent crimes (more than forty years earlier) meant that he posed little risk of danger to any person or the community. *Id.* at *5.

Stone's circumstances are distinguishable. As to the first and the fourth factors from § 3142(g) identified in *Spears*, Stone's crime of conviction was not, itself, a crime of violence, but some of the texts he sent to the minor victim in the execution of the crime involved very serious threats of violence to the victim and succeeded—no doubt as intended—in putting the victim and her mother in fear for their physical safety. The conduct was also cruel and intended to inflict emotional and psychological harm on the victim, even if Stone had no real intention to inflict physical harm. Unlike the situation in *Spears*, the conduct threatening physical harm and inflicting emotion harm was very recent, and Stone's age and health are no impediment to further attempts to inflict either physical or emotional harm. The fact that he did well on supervised release and was allowed to self-surrender do not necessarily demonstrate that the court had no concerns about his potential

for danger, only that he could behave appropriately in the short term while under close supervision and conditions of release. Moreover, the court did not find that the probation or home confinement, in the longer term, would be sufficient to protect the community from the potential for danger that Stone posed, because the court imposed a sentence of imprisonment.

Stone's continued potential to pose a danger to the community weighs against granting his Motion For Compassionate Release, even if it does not, standing alone, warrant denial of his Motion.

### 4. Section 3553(a) factors

The final step in the analysis of a compassionate release motion, if all the other requirements have been satisfied, is to "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." 28 U.S.C. § 3852(c)(1)(A). Although the parties made almost no express references to the § 3553(a) factors in their arguments, the government did assert that the length of Stone's sentence appropriately takes into account important § 3553(a) factors, such as seriousness of the offense and the need for deterrence, to promote justice, and to protect the community from other crimes by Stone.

The court believes it must consider the § 3553(a) factors, even if the parties do not expressly address them. *See Gray*, 2019 WL 4572816, at *5 (considering the § 3553(a) factors even though the parties did not expressly address them). The § 3553(a) factors include "the need for the sentence imposed . . . to promote respect for the law, and to provide just punishment for the offense" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(2), (6); *Brown*, 2019 WL 4942051, at *4. Likewise, the seriousness of a defendant's offense and the need for his sentence to afford adequate deterrence may counsel against compassionate release. *Early*, 2019 WL 4576281, at *1 (citing § 3553(a)(2)(A) and (B)). On the other hand, a pre-FSA sentence may be "greater than necessary" when considered in light of new qualifying "extraordinary and

compelling" circumstances. *See Spears*, 2019 WL 5190877, at *5; *Gray*, 2019 WL 4572816, at *5; *United States v. Wong Chi Fai*, No. 93-CR-1340 (RJD), 2019 WL 3428504, at *4 (E.D.N.Y. July 30, 2019). Thus, for example, the court may consider whether the time the defendant has already been incarcerated has imposed a sufficiently significant sanction for the conduct at issue. *Gray*, 2019 WL 4572816, at *5 (citing § 3553(a)(2) and (6)). Also, even if a compassionate release might result in a sentencing disparity, that disparity may be warranted, in light of the "extraordinary and compelling" circumstances presented. *Spears*, 2019 WL 5190877, at *5.

As the court explained at sentencing, Stone's offense was serious and hurtful in many different ways, and the seriousness of the offense was aggravated by the efforts Stone took to conceal his identity when he was committing it—which the court reiterates belies a claim that the conduct was alcohol induced. *See* 18 U.S.C. § 3553(a)(1), (2); Sentencing Transcript [Dkt. No. 129], 26:2-12. Stone's prior criminal history was not spotless, and included assaultive conduct, which figured in the court's determination of just punishment. *See* 18 U.S.C. § 3553(a)(2)(A); Sentencing Transcript, 26:13-19. Moreover, the court was aware at the time it originally sentenced Stone that his wife was disabled due to several neck and back conditions that required surgery. PSR, ¶ 48. As one court observed, "[S]urely many inmates share the plight of having an incapacitated spouse or partner at home." *United States v. Bucci*, No. CR 04-10194-WGY, 2019 WL 5075964, at *2 (D. Mass. Sept. 16, 2019). Unfortunately, the loss of the opportunity to care for such a spouse or partner may be a consequence of a defendant's conviction and incarceration, but, here, it was not one that was unforeseen by the court when it originally determined Stone's sentence. The court expressly considered the collateral consequences to Stone's family, but the court reiterates its conclusion that the collateral consequences to the victims are worse. Sentencing Transcript, 27:1-7. The court also reiterates its conclusion at Stone's sentencing that the need for adequate deterrence to criminal conduct is exceedingly important, here, and the need to protect the public from further crimes is a factor. *Id.* at

27:8-10.  Moreover, the court considered the sentencing options available, *id.* at 10-12, which included Stone's request for home confinement or probation, so that they are not unlike his current request for home confinement as a form of compassionate release.  The court rejected the sufficiency of those specific options as sufficient but not greater than necessary at sentencing and does so, again, on a motion for compassionate release.

Thus, even accepting that Stone has now presented an "extraordinary and compelling reason" for compassionate release, that reason is not one that the court did not previously consider, and it is not one that outweighs the court's conclusion that a sentence to 18 months of imprisonment remains sufficient but not greater than necessary in light of Stone's crime and all pertinent factors and circumstances.  Furthermore, the court is not persuaded by Stone's contention that he will likely be transferred to a halfway house the first week of December 2019, so that, if his request for compassionate release is granted, his release into the community would only come about three to four months earlier than what is already anticipated.  This is so, because Stone's sentence was relatively lenient, in light of his advisory guidelines sentencing range and even in light of the government's recommendation in compliance with Stone's plea agreement.  Stone's situation is not in any way comparable to that of the defendant in *Gray*, who had been incarcerated for nearly two decades, which was a significant sanction, particularly when that defendant had been seriously ill for much of that time, which that court found meant that his sentence had been significantly more laborious and difficult than that served by most inmates.  Under these circumstances, the court in *Gray* found that further incarceration was greater than necessary to serve the purposes of punishment set forth in § 3553(a)(2).  2019 WL 4572816, at *5. Stone's circumstances do not warrant releasing him into the community early by a significant fraction of his relatively short sentence.

Stone's compassionate release pursuant to § 3582(c)(1)(A) is not warranted upon consideration of the applicable § 3553(a) factors.

### III.    CONCLUSION

Even accepting that Stone has now presented an "extraordinary and compelling reason" that might qualify him for a compassionate release pursuant to the First Step Act, the court concludes that consideration of all of the relevant steps in the analysis of such a request—and in particular, considering Stone's continuing risk of danger to the community and the applicable § 3553(a) factors—demonstrates that compassionate release is not warranted.

Upon the foregoing,

**IT IS ORDERED** that defendant Stone's July 24, 2019, Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A) [Dkt. No. 146] is **DENIED.**

**DATED** this 22nd day of October, 2019.

JOHN A. JARVEY, Chief Judge
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA